CONTINENTAL NAT. BANK *v.* ELIOT NAT. BANK and others.

*(Circuit Court, D. Massachusetts.   May 21, 1881.)*

1. NATIONAL BANKS—TRANSFER OF STOCK—ATTACHMENT.

An unrecorded transfer of national bank stock will take precedence of a subsequent attachment in behalf of a creditor without notice.—[ED.

In Equity.

*W. C. Loring* and *J. C. Gray,* for complainants.

*A. A. Ranney,* for defendants.

LOWELL, C. J.   R. B. Conant was the cashier of the Eliot National Bank, of Boston, and owned 158 shares of its capital stock.   Each of his certificates contained these words: "Transferable only on the books of the bank by the said Conant, or his attorney, on the surrender of this certificate." The Continental National Bank, of New York, was the regular correspondent of the Eliot Bank.   In April and May, 1877, Conant borrowed $9,500 of the Continental Bank, in two sums of $5,000 and $4,500, and sent them as collateral security certificates for 95 shares of stock of the Eliot National Bank, with a power of attorney to transfer them upon the books, but they were not so transferred.   The by-laws of the bank provide that the stock shall be assignable only on the books; that when stock is transferred the certificate shall be returned to the bank and cancelled, and a new certificate issued.   In July, 1878, Conant confessed to the directors of the Eliot Bank that he had embezzled the funds of the bank to the amount of about $70,000.   They required him to resign his position as cashier, which he did, and he has since been convicted, and is now serving a sentence of imprisonment for his fraud.   The Eliot Bank attached his shares in an action which is still pending in the superior court for Suffolk county.   Afterwards the Continental Bank sent to the Eliot Bank the certificates and powers of attorney, and demanded a transfer and new certificate, which was refused. This bill is filed to require the transfer to be made, or for damages, or other relief.   Conant is made a defendant, and

the bill as against him has been taken *pro confesso.* The officer is likewise a defendant, but it is admitted that no decree can be made against him.

The only question of fact in dispute is whether the Eliot Bank, before attaching the shares, had notice that they had been pledged, or mortgaged, to the complainants. Conant testifies that at the meeting of the directors at which he confessed his misdoings, he was asked what assets he had, and mentioned certain shares of mining stock, and other things; and that the president asked about these bank shares, and was informed of the fact that they were pledged to the New York banks for their face value. Conant, soon after leaving the directors' room, consulted Mr. Morse, an attorney of this court, who went at once and saw the directors before they had left the bank; and he testifies that he was told there by some one or more of them that this stock was pledged. On the other hand, none of the directors remember such a conversation; and some of them are confident that none such can have occurred. If it occurred, it is admitted that the attachment could not hold because the attaching creditor had notice of the transfer. *Black* v. *Zacharie,* 3 How. 483.

I am inclined to think that the affirmative evidence must prevail in this case; but there is so much doubt in my own mind, that I have thought best to examine the disputed question of law, whether the attachment would take precedence if made without notice to the attaching creditor of the unrecorded transfer.

The arguments have been very thorough on both sides, and a great many cases have been cited. It has been very ably urged that by the law of Massachusetts the attachment would have the preference. This I consider doubtful; but the decision does not depend upon the law of Massachusetts.

1. It is not important to consider whether the contract was consummated in Massachusetts or in New York. The negotiability or transferable quality of the stock of a national bank depends upon the laws of the United States. *Dickinson* v. *Central National Bank,* 129 Mass. 279. In *Merchants' Bank* v. *State Bank,* 10 Wall. 604, the admitted law and usage

of Massachusetts, where both the national banks were situated, and where the transactions took place, were wholly disregarded by the majority of the supreme court. The negotiability of foreign scrip in England is not governed by the law of England, but by the law of the foreign country, which may be proved by the general usage of brokers and others dealing with such scrip. *Goodwin* v. *Robarts*, 1 App. Cases, 476. The time and mode of attaching property, and its effect in general, are part of the law of the forum; but its operation upon unrecorded transfers of shares in national banks is regulated by the law which creates the shares and provides for their conveyance and registration. That law is section 5139, Rev. St., which provides that shares may be transferred on the books of the association in such manner as may be prescribed by the by-laws or articles of association. Such a law, in Massachusetts, might possibly mean that creditors could attach the shares as the property of the recorded owner. *Blanchard* v. *Deedham Gas-light Co.* 12 Gray, 213. I have already said that I doubt if this is now the law of Massachusetts, and I shall return to the subject presently; but that law favors attachments in certain classes of cases to an unusual extent.

2. It is a general rule that creditors, whether they proceed by an attachment on *mesne process*, seizure on execution, creditor's bill, or through an assignee in bankruptcy, must take their debtor's property subject to all equitable as well as legal charges, liens, or opposing titles. *Willes*, J., in giving judgment in the Queen's Bench in 1868, in a case quite analogous to this, against the right of seizing shares of the apparent owner, said that it was a rule applied by that court more than a hundred years before, in the analogous case of the statutory execution under the bankrupt law, that the creditors can have no more than a debtor was entitled to in equity or at law. *Pickering* v. *Ilfracombe Ry. Co.* L. R. 3 C. P. 235, 251.

It has been the law of the lord mayor's court in London, from the time of Richard I., that an equitable assignment of a *chose in action* should prevail against an attachment. *West-*

*oby* v. *Day,* 2 E. & B. 605. This application of the rule obtains in Massachusetts, and in the United States generally, though a few courts hold otherwise. Drake on Attachments, *c.* 24; *Thayer.* v. *Daniels,* 113 Mass. 129, and cases cited.

The doctrine is so familiar that I will merely cite authorities to show that it is the general rule in Massachusetts as well as elsewhere. The exceptions to it in this state I will consider afterwards. See *Wakefield* v. *Martin,* 3 Mass. 558; *Dix* v. *Cob,* 4 Mass. 508; *Kendall* v. *Lawrence,* 22 Pick. 540; *Kingman* v. *Perkins,* 105 Mass. 111; *Thayer* v. *Daniels,* 113 Mass. 129; *Boston Music Hall Ass'n* v. *Cory,* 129 Mass. 435.

3. The incorporeal property of the shareholder in a company of this sort is represented by his certificates; and, if these are conveyed, the failure to record the conveyance is not evidence of such a constructive fraud as sometimes arises from the possession of chattels after the property has been parted with. On the contrary, it was proved in early cases to be the usage, and is now adopted by the courts as law based on such usage, that the possession of the certificates, with a power to transfer them, is *prima facie* evidence of title; and if, in fact, the possessor has given value, his title cannot be impeached even by subsequent purchasers who did not receive the certificates, much less by creditors of the transferrer. In late cases these certificates are likened to bills of lading and other *quasi* negotiable securities. See *Black* v. *Zacharie,* 3 How. 483; *Bank* v. *Lanier,* 11 Wall. 369; *Johnson* v. *Laflin,* (S. C. U. S.) 12 Cent. L. J. 440; *U. S.* v. *Vaughan,* 3 Binney, 394, approved in *U. S.* v. *Cutts,* 1 Sumn. 133; *Finney's App.* 59 Pa. St. 398; *Wood's App.* 10 Weekly Rep. 125; *Smith* v. *Crescent City Co.* 30 La. Ann. 1378; *Bridgeport Bank* v. *Schuyler,* 34 N. Y. 30; *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325; *Winter* v. *Belmont Mining Co.* 53 Cal. 428; *Fraser* v. *Charleston,* 11 S. C. 486; *Strong* v. *Houston R. Co.* 10 Weekly Rep. 28; *Broadway Bank* v. *McElwrath,* 13 N. J. Eq. 24; S. C. 24 N. J. Eq. 496; *Prall* v. *Tilt,* 28 N. J. Eq. 483; *Merchants' Bank* v. *Richards,* 6 Mo.

App. 454; *Conant* v. *Seneca Co. Bank,* 1 Ohio St. 298; *Duke* v. *Cahawba Navigation Co.* 10 Ala. 82; *Ross* v. *S. W. R. Co.* 53 Ga. 514.

In many of the foregoing cases there were laws providing for the transfer of shares upon the books of the company. But the courts held that this registration was intended chiefly for the convenience of the company, to enable it to know who should have dividends and who should vote. No doubt it is sometimes intended as a record of persons liable for the debts of the company, and is so in the case of national banks; but the great weight of authority is that it is not intended for the benefit of creditors of the individual shareholders. Some of the courts hold that the unrecorded transfer passes only an equitable title; others, that it gives a legal title. I assume that by the decisions in the courts of the United States only an equitable title is acquired. That point is unimportant.

4. The statutes of many, perhaps of most, of the States, provide that certain conveyances of land and of chattels shall be recorded, and that until record is made a conveyance shall have no effect excepting between the parties, and, in most cases, those having actual notice. An attaching or seizing creditor, without notice of a prior conveyance, is, undoubtedly, within the words of those statutes; and so such creditors have come to be treated, and even spoken of, as in some sort purchasers. A few of the statutes requiring registration of the shares of companies follow the exact language of these registry laws, and declare that no unrecorded title shall be good, or only against persons having notice. In California, even, such a law is held not to avail creditors, (*Winter* v. *Belmont Co.* 53 Cal. 428;) but in Maine and Massachusetts, the decision, and perhaps the better one, is that such a law must be construed like other similar registry laws. *Skowhegan Bank* v. *Cutler,* 49 Me. 315; *Rock* v. *Nichols,* 3 Allen, 342. It was in this state of things that the case which is the support of the defence here was decided. In *Fisher* v. *Essex Bank,* 5 Gray, 373, the charter of a bank incorporated in Massachusetts provided that the shares should be transferred only at the banking house, and upon the books of the com-

pany, and the court held that an attaching creditor could hold against an earlier unrecorded transfer for value. I have studied this decision with care. It seems to proceed upon the theory that by the charter, which is a public statute, there can be no such thing as an equitable transfer, or, at any rate, none except by a sort of equitable estoppel between the parties, and that it was a part of the intent of the act that a creditor at law should have the legal right to attach the legal title. This decision has been followed in Illinois, (*People's Bank* v. *Gridley*, 91 Ill. 457,) but rejected in the other states, so far as their courts have passed upon it. It is sometimes spoken of as being the law of Connecticut and Vermont, but the early cases in the former state are much modified by *Colt* v. *Ives*, 31 Conn. 25. The case cited from Vermont (*Rice* v. *Curtis*, 32 Vt. 464) is not in point. It is opposed directly to many of the cases already cited under the third point, and to the general principle that attaching creditors are bound by all equities, including equitable estoppels. It has, moreover, been seriously modified, if not wholly overruled, in Massachusetts, in *Dickinson* v. *Central Nat. Bank*, 129 Mass. 279, printed, but not yet published. The Central National Bank had a by-law like that now in question, and A., the owner of ten of its shares, had transferred them by way of security, precisely as Conant transferred his shares, and afterwards became bankrupt. The transferee, still later, sold the shares at public auction, under his power, after due notice to A. and to his assignee. The bank, notwithstanding a notice and demand by the assignee in bankruptcy, transferred the shares to the purchaser. The assignee sued the bank for damages, but was defeated. *Colt*, J., delivering the opinion of the court, says that *Fisher* v. *Essex Bank, ubi supra*, does not apply, because in that case the charter had the force of a general law, but that a by-law has no such effect, (citing *Sargent* v. *Essex Marine R. Co.* 9 Pick. 201,) and that in the absence of such a general law the transferee took an equitable title which should prevail against the assignee in bankruptcy of the transferrer. The only circumstances in *Fisher* v. *Essex Bank*, not found in

*Dickinson* v. *Central Bank,* are these: (1) The law in the former case contained the word "only"—that the shares should be transferred only so and so; (2) that an attaching creditor and not an assignee in bankruptcy was concerned; (3) that the law governing the company was a Massachusetts law, which might be differently construed from a national banking act. The first and third points, of course, are the same in this case as in the later one in Massachusetts. The second is not sound in this court; an assignee and attaching creditor stand precisely alike, according to the law which governs this controversy.

5. The doctrine of *Dearle* v. *Hall,* 3 Russ. 1, confirmed in *Foster* v. *Cockrell,* 3 Cl. & Fin. 466, is much relied on by the defendants. This doctrine is that of two innocent purchasers of merely equitable interests he shall be preferred who first gives notice to the trustee or holder of the legal title. To this there are several answers: 1. Though the corporation is for some purposes a trustee for the shareholders, the latter have an independent legal property in their shares which they can convey, and whether their actual conveyance is legal or equitable is of no consequence. 2. The doctrine applies in England only to purchasers, and not to creditors seizing or attaching, even though a statute gives a right to seize all shares standing in the debtor's name in his own right. This statute was once held by the Queen's Bench to mean that the creditor might seize what the register showed to be apparently the property of the debtor, (*Watts* v. *Porter,* 3 E. & B. 743;) but this has been overruled, on the ground that the legislature cannot be supposed to have intended to take one man's property for another man's debt, without the most explicit statement of such a purpose; and therefore the "right" refers to the equitable as well as legal right. *Dunster* v. *Lord Glengall,* 3 Ir. Ch. 47; *Scott* v. *Lord Hastings,* 4 K. & J. 633; *Beavan* v. *Earl of Oxford,* 6 D. M. & G. 524; *Eyre* v. *McDonald,* 9 H. L. 619; *Robinson* v. *Nesbitt,* L. R. 3 C. P. 264; *Pickering* v. *Ilfracombe Railway Co.* L. R. 3 C. P. 235; *Gill* v. *Continental Gas Co.* L. R. 7 Ex. 619.

A few courts in this country have carried the doctrine of

*Dearle* v. *Hall* so far as to uphold the garnishment of a non-negotiable debt which had been equitably assigned without notice. We have already seen that this is not the law in England nor in Massachusetts. Neither is it the law of the United States generally. Drake, Attachments, *c.* 24; *Cornick* v. *Richards,* 3 Lea. 1. The supreme court of Tennessee in that case refused to extend the rule to shares of stock, though it applies in that state to *choses in action.* As shares are not *choses in action,* and as attaching creditors are not purchasers, *Dearle* v. *Hall* is not in point.

6. It remains only to cite two decisions of the supreme court, which, in principle, are decisive of this case. In *Bank* v. *Lanier,* 11 Wall. 369, a national bank was required to make good to the holder of an unrecorded certificate the value of his shares, although they had been transferred on the books to a subsequent purchaser for value. That purchaser, to be sure, was not before the court, but if his title was better than that of the plaintiff, the bank was justified in transferring the shares and would have had a perfect defence. *Dickinson* v. *Central Nat. Bank,* 129 Mass. 279; *Gill* v. *Continental Gas Co.* L. R. 7 Ex. 232. If a purchaser for value could not hold against the holder of the unrecorded certificate, *a fortiori* of an attaching creditor.

*Bullard* v. *The Bank,* 18 Wall. 589, is in the same line of thought. It decides that certificates of shares in national banks are so far negotiable, or *quasi* negotiable, that a by-law of the bank, which undertakes to make them subject to the debt of the transferrer to the bank itself, is void. On the same ground it was held that a by-law like that of the Eliot National Bank, if intended to give attaching creditors a better title than transferees who had not recorded their certificates, was void. *Sargent* v. *Marine Ry. Co.* 9 Pick. 201. Here, again, the argument is *a fortiori.* If the bank cannot create a lien by its by-law, much less can it obtain one indirectly, by attachment, upon the construction of an ambiguous by-law.

My conclusion is that the attachment of Conant's shares cannot prevail against the complainants' earlier title, whether

that is equitable or legal. There is no conflict of jurisdiction, because no state court or officer has taken possession of anything. The question is merely one of title. A bill in equity will lie, because the complainant company has, or might have, a right to require the shares to be transferred to it. As values are at present, it would be more just to enter a decree for the debt due the complainants, and interest, which would leave a considerable value for the defendant bank if the present market price holds. I understood counsel to say that the precise form of the decree could probably be agreed on.

Decree for the complainants.