## Telford & Franconia Turnpike Company, Plff. in Err., *v.* John Gerhab, to Use, etc.

An assignment in good faith and for valuable consideration by indorsement on a certificate of the stock of a corporation, followed by notice to the secretary and directors of the corporation, but without the production of the certificate, confers title upon the assignee as against a subsequent attaching creditor of the assignor.

(Argued February 1, 1888. Decided March 19, 1888.)

January Term, 1888, No. 169, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Montgomery County to review a

NOTE.—The facts of Miller v. Peabody Bank, 15 W. N. C. 76, are similar, and led to the same determination.

judgment on a finding of the court in an action of assumpsit, June term, 1883, No. 92.   Affirmed.

This was an action of assumpsit, by John Gerhab to the use of John N. Jacobs, against the Telford & Franconia Turnpike Company, for the value of eleven shares of stock and dividends accrued.

By agreement of counsel, reserving the right to a writ of error, the action was tried by BOYER, P. J., without a jury.   His findings of fact and law, filed April 4, 1887, was as follows:

John Gerhab was the owner of eleven shares of the capital stock of the Telford & Franconia Turnpike Road Company, for ten of which a certificate had been issued by the company to John Gerhab direct, and one share was assigned to him by Henry D. Musselman.   On the 13th day of March, 1879, the eleven shares were assigned by John Gerhab for a sufficient consideration, to John N. Jacobs, of which fact Gerhab, who was in the board of directors of the company, and president of the same, immediately notified his associate directors, and resigned his office. The secretary of the company was also notified.   The assignment was not made upon the books of the company; and in fact the turnpike company had no book for the transfer of stock by the seller in person or by attorney.   It had a book which was termed a transfer book; but it was a book used simply to note transfers of stock by the secretary.   The real transfer was on the back of the certificate, and in the form prescribed by the company, which differs from the usual form indorsed upon certificates of stock contemplating a formal transfer upon the books, but is a printed form for a direct and immediate assignment and transfer in itself.

It is true that upon the face of the certificates occur the printed words "transferable in the books of the company in person or by attorney;" but the important word "only," in this connection, confining the transfer to be upon the books alone, as usual in such notices, is omitted; and the practice of the company conforms to this omission, as no actual transfer upon its books was ever made by a seller; but the transfer of stock upon its books was in its practice simply a notation by the secretary that such transfer had been made.   When, therefore, Gerhab executed his absolute assignment upon the back of the certificates

in the form furnished by the company itself, in its printed blank indorsed thereupon, Jacobs became the equitable owner of the stock without any notation by the secretary upon the so-called transfer book; and after due notice to the company he became entitled to demand and receive any and all dividends afterwards declared upon the stock so acquired by him. He became entitled also to have his ownership noted upon the books of the company upon notice to the company of his purchase, and the presentation of the certificates with the assignments upon them. This the company, after notice through its officers, refuses to do, having allowed judgment to be recovered against it as garnishee of John Gerhab upon an attachment execution issued by the Union National Bank of Souderton, a judgment creditor of Gerhab, upon its answers to interrogatories as follows,—*viz.:*

"At the time of the service of the writ upon the officers of this company the defendant, John Gerhab, held eleven shares of the capital stock of the company. The books of the company show that said shares are now and were at the time standing in the name of John Gerhab, and were never assigned on said books, or, with our knowledge or consent, to any other person."

The garnishee in its answers made no mention that John Gerhab had before that date, and before the issuing of the attachment, notified the officers of the turnpike company that he had assigned his stock, and that he resigned from the presidency of the company on that account.

Upon the judgment so obtained, the stock was afterwards sold at sheriff's sale, and purchased by the Union National Bank of Souderton, the plaintiff in the execution, after notice had been publicly given at the sale by Jacobs that the stock was his, and not the stock of Gerhab. Afterwards the turnpike company marked the stock as transferred to the said purchaser at sheriff's sale, taking a bond of indemnity from the latter.

It is a fact, however, whether material or not, that Jacobs did not produce and exhibit to the officers of the turnpike company the certificates with the assignments upon them, until after the date of issuing and service of the attachment, nor until after the stock had been marked by the company upon its books as transferred to the bank. But the assignment of the stock by Gerhab to Jacobs, and notice thereof to the company, preceded the date of the writ of attachment execution, and should have warned the company to be cautious in its answer to the interrogatories filed

by the attaching creditor, and to notify Gerhab's assignee to defend the suit.

Under these circumstances I hold that the proceedings in the attachment execution did not affect the ownership of the stock previously acquired by Jacobs, although not actually marked as transferred to him upon the books of the turnpike company. Even if the printed notice on the certificate had said that the stock was "only" transferable on the books of the company, Jacobs would still have become the equitable owner of the stock under the assignment to him, and was entitled to hold the same against all subsequent attaching creditors of Gerhab; and the turnpike company after notice of the assignment by Gerhab had no authority to treat it as his.  See Com. v. Watmough, 6 Whart. 117; Finney's Appeal, 59 Pa. 398.

But if, as we have seen, Jacobs had become the virtual owner of the stock, and entitled to demand accruing dividends, it is not easy to see what substantial injury he has thus far suffered, merely from the refusal of the defendant company to note the transfer on its books, unless he had thereby lost an advantageous sale, which does not appear.  Nor is this the form of action in which to recover the damages for the refusal to note the transfer. The refusal was a tort, the remedy for which is a special action on the case.  See Morgan v. Bank of North America, 8 Serg. & R. 73, 11 Am. Dec. 575; Birmingham F. Ins. Co. v. Com. 92 Pa. 72; German Union Bldg. & Sav. Fund Asso. v. Sendmeyer, 50 Pa. 67; 10 Johns. 484.

It is true the tort, in many cases of tort, may be waived, and an action brought in assumpsit.  But this is only where the circumstances raise an implied contract.  For example: assumpsit does not lie for a chattel illegally detained; but it does where one tortiously in the possession of another's goods converted them. In such case the plaintiff cannot waive the tort and recover the value of the goods unless the tort feasor has sold them and received the money, or where he has taken them as merchandise to market for the purpose of sale and receipt of the money.  See Bethlehem v. Perseverance Fire Co. 81 Pa. 446–455; Boyer v. Bullard, 102 Pa. 555; Willet v. Willet, 3 Watts, 277; Gilmore v. Wilbur, 12 Pick. 120, 22 Am. Dec. 410; McCullough v. McCullough, 14 Pa. 295.

It cannot be said that there ever was a conversion of this stock by the turnpike company, so as to raise the implied promise to

pay for it. The mere marking it upon the so-called transfer book as having been transferred to the bank was no conversion for the use of the turnpike company. Nor was it any conversion at all; for such marking in itself conferred no title to the real ownership of the stock, nor deprived the lawful owner of his rights. In this regard therefore the marking the stock as transferred to the bank was a nullity; and the refusal of the company to mark the stock as transferred to Jacobs in accordance with the practice of the company in changes of ownership was simply a tort, and not one from which an implied contract can arise. The case of Bank of Montgomery v. Reese, 26 Pa. 143, cited by plaintiff's counsel, has no application; for there, there was an unlawful conversion of the stock by the bank, to which the plaintiff was as a stockholder ratably entitled, but from the benefit of which he was excluded. That was a tort, therefore, from which an implied promise arose upon which assumpsit could be sustained.

But we are of opinion that assumpsit is well brought for recovery of the dividends upon the disputed stock due at the date of the institution of the suit. This suit was brought May 11, 1883, when only one dividend amounting to 3 per cent upon the capital stock had accrued. The later and larger dividends must, unless paid, be recovered in another suit.

The plaintiff is also entitled to interest from the date of his demand; but as there is no evidence of the precise date of the demand we allow interest from the commencement of this suit, May 11, 1888.

Principal of dividend $16.50, plus interest from May 11, 1882, to April 4, 1887, $3.77=$20.27, the amount recoverable. As the sum which can be recovered in this action is within the jurisdiction of a justice of the peace, the judgment must be entered without costs.

Judgment to be entered accordingly, in favor of the plaintiff, unless exceptions are filed within thirty days, for the sum of $20.27, without costs.

To the finding and conclusions of law of the court the defendant filed the following exceptions:

1. The court erred in holding that the transfer to Jacobs on the back of the certificates, and without the production thereof to the proper officers of the turnpike company and without de-

manding a transfer of the stock on the books of the company, conferred a title thereto in said Jacobs, as against the attachment execution creditor.

2.   The court erred in holding that Jacobs had any title to the stock in question.

3.   The court erred in entering judgment for the plaintiff.

The court overruled all the exceptions and this action as to the several exceptions was the subject of the three assignments of error respectively.

*Irving P. Wanger,* for plaintiff in error.—When the corporation itself is not dealing with its stockholder in the security of his stock and is merely performing a corporate duty, its own record is all that it needs to consult; for whoever would demand the privileges of a stockholder, should produce the evidence of his title, and ask to be permitted to participate.   Bank of Commerce's Appeal, 73 Pa. 59.

Where the act of incorporation and the rules of an association provide that transfers of stock shall be made only upon the books of the company, such provision excludes all other forms of transfer.   Fisher v. Essex Bank, 5 Gray, 373; Boyd v. Rockport Steam Cotton Mills, 7 Gray, 406; Northrop v. Newton & B. Turnp. Co. 3 Conn. 544; Oxford Turnp. Co. v. Bunnel, 6 Conn. 552; Dutton v. Connecticut Bank, 13 Conn. 498; Shipman v. Ætna Ins. Co. 29 Conn. 245; Lockwood v. Mechanics Nat. Bank, 9 R. I. 305, 11 Am. Rep. 253; Sabin v. Bank of Woodstock, 21 Vt. 353; Pinkerton v. Manchester & L. R. Co. 42 N. H. 424; People's Bank v. Gridley, 91 Ill. 457; Weston v. Bear River & A. Water & Min. Co. 6 Cal. 425; Naglee v. Pacific Wharf Co. 20 Cal. 530; Williams v. Mechanics' Bank, 5 Blatchf. 59, Fed. Cas. No. 17,727; Brown v. Adams, 5 Biss. 181, Fed. Cas. No. 1,986.

This court, although perhaps never recognizing this doctrine to its full extent, has never intimated that a transferee may disregard such provision, and, with the knowledge of an adverse proceeding to obtain the stock by a creditor of the assignor, lead the corporation into an obligation under such proceedings which the simple production of his transfer and certificate in accordance with the notice printed thereon, would have avoided.

*Charles Hunsicker,* for defendant in error.—We agree that the learned judge erred, but not as the plaintiff in error contends.

The learned judge says that the case of Bank of Montgomery v. Reese, 26 Pa. 143, does not apply. But we did not cite that case as the learned judge supposes. We cited the case of Reese v. Bank of Montgomery County, 31 Pa. 78, 72 Am. Dec. 726, where the point as to the form of action was directly raised. The action there as here was assumpsit; there as here, the company transferred the stock to some one else, and refused to transfer the stock to Reese. The court held that he could sue in assumpsit.

It therefore comes with bad grace for the company to say that it "had no notice."

Lastly—Jacobs was no party to the attachment proceedings.

Stock in a bank or other corporation, standing in the name of a defendant in an execution, is not liable to be sold as his, under the act of March 29, 1819, if actually the property of another. Com. v. Watmough, 6 Whart. 117.

The delivery by an owner of stock of a power to transfer executed in blank, with the certificate, is evidence of an implied authority to fill up the power with the name of an attorney to make the transfer. German Union Bldg. & Sav. Fund Asso. v. Sendmeyer, 50 Pa. 67.

That the' stock was transferable only on the books of the company does not change the rule,—viz., that the title to the stock passed to the creditors at the time of the delivery of the certificate and power of attorney, although it continued to stand on the books of the company in the debtor's name. Finney's Appeal, 59 Pa. 398.

Thus the court was in error in not allowing Jacobs, the plaintiff below, to recover in the action either as brought or amended, if amendment was needed, in the language of German Union Bldg. & Sav. Fund Asso. v. Sendmeyer, 50 Pa. 67, "the actual value at the time of the refusal to transfer." This value was about $100 per share. But the plaintiff in error cannot complain of this ruling.

Per Curiam:

This case is affirmed on the opinion of the court below.