## STATE BANKING & TRUST CO. v. TAYLOR.

Civ. Code, § 423, provides that all corporations for profit shall issue certificates of stock, and that such shares of stock are personal property, and may be transferred by indorsement and delivery, but that such transfer shall not be valid except between the parties thereto, until the same is entered upon the books of the corporation showing the names of the parties by and to whom transferred, the number of shares, and the date of the transfer. Section 445, after providing for certain records to be kept by a corporation, and that the same shall be kept open for the inspection of any director, member, stockholder, or creditor of the corportion, requires to be kept a "stock and transfer book," in which shall be entered the names of all stockholders, and every sale or transfer made, the date thereof, and by and to whom, and that such book shall be kept open for the inspection of any stockholder, member, or creditor. **Held,** that section 445 is not a public registration act, and that the right of a pledgee of corporate stock, though such transfer is not entered in the "stock book,' is superior to that of a subsequent attaching creditor of the pledgor, whether such creditor had notice of the transfer or not.

Civ. Code, § 2369, making every transfer of personal property other than a thing in action without immediate change of possession void as against creditors and others, has no application to a pledge of corporate stock any more than it would to any chose in action evidenced by a writing, and a transfer of the certificate for such stock is sufficient.

The attachment of pledgor's equity in corporate stock pledged is sufficient to give the court jurisdiction to render a judgment founded upon service by publication.

(Opinion filed, June 4, 1910.)

Appeal from Circuit Court, Minnehaha County, Hon. Joseph W. Jones, Judge.

Action by the State Banking & Trust Company against F. W. Taylor. Judgment for defendant, and plaintiff appeals. Reversed, with directions.

*Joe Kirby,* for appellant.

When the highest judicial authority authorized to pass on the construction of the Constitution or statute of a country have passed upon and construed the same, the meaning as given, becomes as much a part of such law as though it had originally been written therein. Where parties have acted upon such law, so interpreted, their rights will be protected, regardless of any subse-

quent change of position by the court. Such law with its interpretation becomes a rule of property. 2 Lewis' South St. Cons. 2nd Ed Sec. 485; 1 Kent Com. 475; Jones Essay Bail. 46; Rowan v. Runnels, 5 How. 134; Douglas v. Pipe Co., 101 U. S. 677-86; Trust Co. v. Debolt, 16 How. 416; Myers v. Boyd, 43 N. E. 567. The entering of the assignment of stocks under Section 423 Civil Code, is not like registering conveyances in the register of deed's office, for the benefit of the public, but purely for the use of the corporation. Mapleton Bk. v. Standrod, 67 L. R. A. 656; Lund v. Roller Mill Co., 52 N. W. 268; Broadway Bk. v McElrath, 13 N. J., Eq. 24; Strange v. Railway Co., 53 Texas, 162; Kellogg v. Stockwell, 75 Ill. 68; Clark v. Security Bk., 61 Miss. 611; Merchants Bk. v. Richards, 74 Mo. 77; Continental Bk. v. Eliot Bk., 7 Fed. 369; Masury v. Arkansas Bk., 35 C. C. A. 476; Port Townsend Bk. v. Gas Co., 34 Pac. 155; Kentucky Bk. v. Avery, 12 Nat. Cor. Rep. III; Thurber v. Crump, 6 S. W. 145; Weston v. Mining Co., 6 Cal. 425.

*Boyce & Warren* and *Bates & Parliman*, for respondent.

Section 2369, Civil Code, making invalid all transfers of personal property unless accompanied by an immediate delivery and followed by an actual and continued change of possession. Stock in an incorporated company is personal property. Fort Madison L. A. v. Batavian Bank, 32 N. W. 338. Under such a statute an unregistered sale or pledge of corporate shares is presumptively fraudulent and void as against the attaching creditors of the transferrer. Civil Code, §§ 423, 2369; In re Murphy, 51 Wis. 519; Fort Madison Lumber Co. v. Batavian Bank, 71 Ia. 270; Showheggan Bank v. Cutler, 49 Maine 315; Naglee v. Pacific Wharf Co., 20 Cal. 529; Buttrick v. Nasham, etc. R. Co., 62 N. H. 413; Pinkerton v. Manchester R. Co., 42 N. H. 424; Peoples Bank v. Gridley, 91 Ill. 457; Noble v. Turner, 69 Maryland 519; Abels v. Planters Ins. Co., 92 Ala. 382; Berney Nat'l Bank v. Pinckard, 87 Ala. 577; Commercial Nat'l Bank v. Farmers, etc., Bank, 82 Ia. 192; Ottumwa Screen Co. v. Stodghill, 103 Ia. 437.

WHITING, P. J. The sole question before us upon this appeal is whether the rights of the respondent Taylor, as pur-

chaser under an attachment of certain shares of corporate stock, are superior to those of plaintiff, a pledgee of such stock; the pledgor being the debtor against whom the attachment issued. The cause was tried to the circuit court without a jury, and such court made findings of fact. No question is raised as to the correctness of such findings, but it is the contention of the appellant that such findings do not support the conclusions and judgment of the trial court, by which judgment said court held the rights of the purchaser under the attachment superior to those of the pledgee.

The findings herein are quite voluminous, but, so far as they are necessary for the determination of the issues before us, they may be condensed into the following statement of a supposed case: On or about August 10, 1907, one A., being indebted to B. in the sum of $3,500, gives to B. his promissory note, due October 1, 1907. August 9, 1907, a South Dakota corporation, which we will designate as the D. Company, issues to A. four stock certificates representing certain shares of common stock in said D. Company. In January, 1908, A. indorses said certificates, assigns and delivers each of them to B., such assignments being in form as follows: "For value received, I hereby sell, assign and transfer to B. forty-five and five-sixths (45 5-6) shares of the capital stock, represented by the within certificates, and do hereby irrevocably constitute and appoint B. my attorney to transfer said stock in the books of the within named company, with full power of substitution in the premises. Dated [Date given.]    [Signed] A." On the 9th of August, 1907, D. Company issues to A. a certificate for 16 2-3 shares of its preferred capital stock; and on March 15, 1908, A. indorses, assigns, and delivers such stock certificates to plaintiff in the same manner and form as in the assignment of common stock. The assignment of such certificates is intended and received as collateral security for the payment of the above-mentioned note from A. to B. The transfer of said stock certificates to B. are never entered upon the books of D. Company, but such books at all times show said stock as standing in the name of A. A., being indebted to C., gives C. his promissory note, dated October 9, 1907, and, the same remaining unpaid, C. on March 9,

1908, commences an action against A. and takes out a warrant of attachment issued against the property of A. On the same day the sheriff attempts to levy upon all of the above-mentioned stock by serving notice on the secretary of D. Company that he "attached all the stock or interest in the stock held by the defendant 'A.' in the said D. Company," and by demanding a certificate of said secretary designating the rights and shares of said A. in said company, together with incumbrances on said shares. At the time of such levy the secretary of D. Company delivers to the sheriff a certificate signed by him, to the effect that A. owns the above stock, describing the same, and that there are no incumbrances thereon as shown by the books of the corporation. March 25, 1908, the sheriff files the warrant with his return thereon. A summons and complaint are duly served upon A. Judgment thereafter enters in favor of C. against A., which judgment is in all things attested, filed, and docketed. Execution thereafter issues upon such judgment, upon which execution, and after due notice given, the sheriff sells at public auction all of the said stock to E. After the execution issues upon such judgment, and prior to the sale thereunder, B. notifies the sheriff and C. that the stock has been pledged to him as collateral security for the note he holds and warns the sheriff and C. not to sell, purchase, or in any manner interfere with the rights of B. in said stock. At the time of the sale under execution and prior to such sale, B. reads the last-mentioned notice to the sheriff and to all parties in attendance upon the sale, including E., and B. warns all purchasers that his interest in said stock, to the amount of his note, naming such amount, will be asserted upon the maturity of the note given by A. to B. On the 9th day of October, 1907, A. gives to B. a new note in renewal of such note, said renewal note being dated October 9, 1907, and due on or before February 9, 1908. Thereafter, and before all of the shares of stock are delivered to B., B. decides to collect the original note and not to make any extension thereon, and does not make any extension of the time of payment of such indebtedness, but concludes to rely upon the original note and treat the indebtedness as due at the date of the maturity of the

original note. Was the court correct in holding under the above statement of facts that the respondent, whom we have designated as E., is the absolute owner of the said shares of stock, and that B. has no interest therein?

It is the contention of the appellant that the rights of a pledgee take precedence over those of an attachment creditor of the pledgor, even though the attachment creditor had no notice of the pledge prior to the levy of the attachment. On the other hand, respondent contends that under the statute of this state the attachment lien takes priority over any rights of a purchaser who has not had his transfer recorded in the stock transfer book of the corporation; and respondent further claims that, under the facts in this case, the pledge of stock was wholly without consideration, for the reason that the pledgee elected to treat the original note as due, instead of allowing the extension note to stand. We do not think there is anything in this last contention, for the reason that it is specifically found by the court that the stock was pledged as security for the original note, and there is no evidence that this security was given for any extension of such note.

This leaves for our consideration the sole question of the effect of our statute upon the rights of an attaching creditor in stock attached, as against an assignee of such stock whose assignment, together with possession of the stock, was taken prior to the attachment, but who has failed to have such assignment noted on the corporate records. This question has been before the courts of the different states many times, and it would be impossible to harmonize their decisions. There is some difference in the statutes of the several states, yet there are several states whose statutes are practically identical with that of this state, and this same lack of harmony is to be found in the decisions of the courts of such states. We shall not attempt to analyze the reasonings found in these varying opinions, but in placing upon our statute the interpretation which seems to us most consistent with the fundamental ideas underlying our laws, not only those pertaining to corporations but those pertaining to other subjects, we shall call attention to some authorities which we deem in point.

Appellant claims that the question before us has been determined in its favor by our territorial court in its opinion in Van Cise v. Merchants National Bank, 4 Dak. 485, 33 N. W. 897. This case is found cited, as supporting this position, in the different text-books and encyclopedias, but it is not on all fours with the case at bar. A careful reading of the Van Cise case shows that in that case the notice of the assignee's claim was given to the sheriff at the time of levy. Appellant contends that, inasmuch as such notice was given to the sheriff only, it did not affect the rights of the attachment creditor who had no notice, and that for that reason that case was the same as this one in principle. While approving much of the reasoning in the Van Cise case and agreeing with the conclusion arrived at therein, yet we prefer not to rest our decision herein solely upon that case, although it should have great weight when we consider the number of years it has stood as the announced law of this jurisdiction, and we might be fully justified in holding with the Supreme Court of Minnesota in Lund et al. v. Wheaton, etc., 50 Minn. 36, 52 N. W. 268, 36 Am. St. Rep. 623, wherein (in a case involving the same question which we have here) that court said: "However that may be, and even if a consideration of the provisions of section 8 might possibly have led to a different conclusion as to the validity of the pledge, that decision, made nearly 13 years ago, and hitherto unquestioned, should now be deemed decisive of the question. It has probably been generally so regarded, and it is believed that transfers of stock in pledge and by sale have been extensively made, without having the transactions entered on the books of the corporations. The rule of stare decisis should deter us from now declaring the statute law to be different from what it has heretofore been pronounced to be. We therefore follow former decisions, without entering upon a consideration of the construction which might be given to section 8 of the statute if the question were a new one. In deciding the case in this way we would not be understood as expressing the opinion that a proper construction of the statute would lead to a different conclusion. The tendency of many decisions is in accordance with the rule heretofore announced in this

court and now followed.　See Robinson v. Bank, 95 N. Y. 637;
McNeil v. Bank, 46 N. Y. 325, 331 [7 Am. Rep 341] and cases
cited; Finney's Appeal, 59 Pa. 398; Turnpike Co. v. Gerhab (Pa.
Sup.) 13 Atl. 90; Bank v. McElrath, 13 N. J. Eq. 24; Hunterdon
Co. Bank v. Nassau Bank, 17 N. J. Eq. 496; Thurber v. Crump,
36 Ky. 408, 6 S. W. 145 [10 Ky. Law Rep. 59]; Continental Nat.
Bank v. Eliot Nat. Bank [C. C.] 7 Fed. 369; Cook, Stocks,
§ 487."

The determination of this case must rest upon the construction
to be given to sections 423 and 445 of the Revised Civil Code of
this state.　Section 423 reads as follows:　"All corporations for
profit must issue certificates of stock when fully paid up, signed
by the president and secretary, and may provide in their by-laws
for issuing certificates prior to the full payment, under such re-
strictions and for such purposes as their by-laws may provide.
Whenever the capital stock of any corporation is divided into
shares and certificates therefor are issued, such shares of stock are
personal property, and may be transferred by indorsement by the
signature of the proprietor, or his attorney or legal representa-
tive, and delivery of the certificate; but such transfer is not valid
except between the parties thereto, until the same is so entered
upon the books of the corporation as to show the names of the
parties by and to whom transferred, the number or designation of
the shares, and the date of the transfer."　Section 445, after pro-
viding for certain records that must be kept by a corporation, and
providing that "all such records to be open to the inspection
of any director, member, stockholder, or creditor of the corpora-
tion," provides by the second paragraph of such section:　"In ad-
dition to the records above required to be kept, corporations for
profit must keep a book, to be known as the 'stock and transfer
book,' in which must be kept a record of all stock; the names of
the stockholders or members, alphabetically arranged; installments
paid or unpaid; assessments levied and paid or unpaid; a statement
of every alienation, sale or transfer of stock made, the date thereof,
and by and to whom; and all such other records as the by-laws
prescribe.　Corporations for religious and benevolent purposes

must provide in their by-laws for such records to be kept as may be necessary. Such stock and transfer book must be kept open for the inspection of any stockholder, member, or creditor." Was it the intention of the lawmakers in enacting the above statutes to provide a general registration law for the protection of the public by providing a record open to the public and which should be held as giving constructive notice of its contents to all parties about to deal in any manner with the stock of the corporation, and giving them the right to rely fully upon such records by making all trasfers, not appearing upon such records, absolutely invalid except as between the parties to the transfer, or was it rather the intent to provide a record for the protection of the corporation, its members, and creditors only, and to make unrecorded transfers invalid as against the corporation, its members, and creditors only? The prior Minnesota case referred to in Lund et al v. Wheaton, etc., supra, was that of Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261, in which the court construed a section of the Minnesota statute providing, "The stock of any such corporation shall be deemed personal property, and be transferable only on the books of such corporation, in such form as the directors prescribe," and held: "Provisions of this kind are intended solely for the protection and benefit of the corporation.    *    *    * Except as against the corporation, the owner and holder of shares of stock may as an incident of his right of property transfer the same as any other personal property of which he is the owner." The court in the Baldwin Case made no reference to section 8, tit. 1, c. 34, Gen. St. Minn. 1878, which provides: "The transfer of shares is not valid, except as between the parties thereto, until it is regularly entered on the books of the company, so far as to show the names of the persons by and to whom transferred, shares, and the date of the transfer.    *    *    * The books of the company shall be so kept as to show intelligibly the original stockholders, their respective interests, the amount which has been paid in on their shares, and all transfers thereof; and such books, or a correct copy thereof, so far as the items mentioned in this section are concerned, shall be subject to the inspection of any

person desiring the same." And it was this section 8 that is referred to in our first quotation from the Lund Case. It will readily be seen that the Minnesota statute might well be held to provide a law for public registration, and that therefore any transfer of stock unrecorded to be void as against attaching creditors without notice, because the transfer book in that state is "subject to the inspection of any person desiring the same," while in this state, under section 445, Rev. Civ. Code, supra, it is "kept open for the inspection of any stockholder, member, or creditor," and a reading of the whole section shows clearly that by the word "creditor" is meant only a creditor of the corporation. Under our statute, a person contemplating extending credit to another or contemplating taking a mortgage or transfer of corporate stock from that other has absolutely no right to inspect the books of the corporation to see whether such other is the recorded owner of some of its stock. Our section 445 is not a registration law for the benefit of the public.

Cook, in his great work on Corporations, at section 486 of the sixth Edition, says: "The courts of the different states are in irreconcilable conflict on this question of whether the unregistered transferee is protected in his purchase. The better rule, and the rule which ultimately will prevail, is that an unrecorded transfer of stock is in this respect like an unrecorded deed of land, and gives good title as against subsequent attachment or executions, even though the latter are levied in ignorance of the unrecorded transfer or deed." And in section 487 further states: "The decided weight of authority holds that he who purchases for a valuable consideration a certificate of stock is protected in his ownership of the stock, and is not affected by a subsequent attachment or execution levied on such stock for the debts of the registered stockholder, even though such purchaser has neglected to have his transfer registered on the corporate books, thereby allowing his transferror to appear to be the owner of the stock upon which the attachment or execution is levied. Such is the rule prevailing in the federal courts and in the courts of the above-named states [referring to 21 states]. Frequently this rule is

justified and explained on the ground that registry and by-laws or charter provisions requiring registry of transfers on the corporate books are not for the purpose of notifying the creditors of the old registered stockholder that he no longer owns the stock, nor for any similar purpose, but are for the purpose of protecting the corporation in paying dividends and allowing the stock to be voted. Another and stronger reason is that the law favors the transfer of stock certificates, and discountenances, so far as possible, all secret dangers incurred in their purchase. By protecting the purchaser against subsequent attachments and execution, the law removes one of the chief risks incurred in holding certificates of stock without registry, and thereby increases the safety and desirability of such investments." If in the case at bar there had been no attachment of A.'s stock, but E. had gone to A., after A. had pledged the stock to B. and delivered the certificates to B., and, for full value, had purchased such stock from A., he would have acquired absolutely no rights as against B. He would have occupied a position similar to one who attempts the purchase of a promissory note from a party who has already delivered such note as a pledge to another. He gets simply the equity left in A.

A most exhaustive consideration of this question is found in the case of Lipscomb v. Condon, 56 W. Va. 416, 49 S. E. 392, 67 L. R. A. 670, 107 Am. St. Rep. 938. This case cites Scripture v. Francestown, etc., 50 N. H. 571, holding what certainly under our statute must be conceded as true: "That the ownership of the shares passes from the seller to the buyer by force of the contract of sale, and not by operation of law." In the Lipscomb Case it is said: "If a transfer on the books of a corporation is not required by the charter or by-laws, nor by any general law, it is not necessary to give a transferree a perfect title. In such a case a transfer by delivery of the certificate of stock duly assigned, although not registered on the books of the corporation, will prevail in all jurisdictions over a subsequent attachment by a creditor of the transferror, whether he had notice of the transfer or not. And the same is true where registration of transfers is required by statute, not for all purposes, nor

for the protection of creditors, but merely for the protection of the corporation and its creditors." And again this court says: "In Continental Bank v. Eliot Nat. Bank (C. C.) 7 Fed. 369; holding that an unrecorded transfer of national bank stock will take precedence of a subsequent attachment in behalf of a creditor without notice, Lowell, Judge, delivering the opinion, discusses the question most lucidly and exhaustively, reviewing many of the authorities, both American and English. In speaking of the statutes concerning transfers of the shares upon the books of the company, he says: 'No doubt it is some time intended as a record of persons liable for the debts of the company, and is so in the case of national banks; but the great weight of authority is that it is not intended for the benefit of creditors of the individual shareholder. Some of the courts hold that the unrecorded transfer passes only an equitable title; other, that it gives a legal title. I assume that by the decisions in the courts of the United States only an equitable title is required. That point is unimportant.' Again he says at page 371: 'It is a general rule that creditors, whether they proceed by an attachment on mesne process, seizure on execution, creditor's bill, or through an assignee in bankruptcy, must take their debtor's property subject to all equitable as well as legal charges, liens, or opposing titles. Willis, J., in giving judgment in the queen's bench in 1868, in a case quite analogous to this, against the right of seizing shares of the apparent owner, said that it was a rule applied by that court more than a hundred years before in the analogous case of the statutory execution under the bankrupt law that the creditors can have no more than a debtor was entitled to in equity or at law. Pickering v. Ilfracombe Ry. Co., L. R. 2 C. P. 235, 37 L. J. C. P. 118, 17 L. T. 650, 16 Week. Rep. 458. It has been the law of the Lord Mayor's Court in London, from the time of Richard I, that an equitable assignment of a chose in action should prevail against an attachment. * * *' " After discussing the question as to whether the legal or mere equitable title to the stock in that case had passed, the court said: "As, by the assignment or transfer from the debtor to his

transferee, evidenced by the informal written instrument executed and delivered by the former to the latter, title to the stock, legal or equitable, passed, what is the status of that title as against the attaching creditor, assuming that it is only the equitable title? In addition to the authorities already noted as maintaining its superiority to the attachment lien, the following is quoted from that latest and invaluable work, Cyclopedia of Law and Procedure, vol. 4, p. 632: 'The right of a creditor to property attached must be determined by the state of the title at the time the attachment was made, and, in the absence of fraud and statutory regulations, he only obtains the rights which the debtor had in the property at the time, for the creditor is not in the position of a bona fide purchaser.' " This court further said: "This inquiry as to the grounds upon which some of the courts give precedence to an attachment over an unregistered transfer results in the conclusion that they put it upon the statutes, either authorizing or requiring transfer to be made on the books of the corporation, some of them adopting the view that, as there can be no visible change of the possession of a share, the Legislature intended the record to take the place of visible possession by way of analogy to the common-law rule relating to tangible property, and others adopting the view that the statutory provisions is in the nature of a registration law for the protection of the public. It has been shown that, where the former theory was adopted, it has either been abandoned or displaced by statutes. Moreover, there never was any basis for the assumption of legislative intent to require recorded evidence of ownership of shares, when the statute did not make the record a public one. It might as well be assumed that some record ought to show who owns other choses in action, evidenced by notes, bonds, and other obligations. The latter has been almost universally condemned as imputing to the Legislature an intent not warranted by the language of the statute or the nature of its subject-matter. Of it Thompson on Corporations, § 2411, says: 'But this view, which makes the stock and transfer books public records open to the inspection of the public, is plainly untenable unless the statute

law (as it does in some states) obliges the corporation to expose such records to the inspection of the public.   Otherwise they are strictly private records, sustaining no analogy to the records of transfers of title required to be made and kept in public recording offices; and even these last records import no notice except in those cases where the statute law expressly so provides.' " Holding, as we do, that section 445, Rev. Civ. Code, is not a public registration act, the following words from the Lipscomb Case become applicable to the case at bar: "It is obvious that unless section 36 or some other provision of the statute is to be regarded as a' registration law for the protection of the public, who have no access to the books of the company, these sections are intended only to protect the corporation and those who claim under the certificates of stock."

It is also urged that the pledge of stock to B. would be absolutely void under section 2369, Rev. Civ. Code, making certain transfers of personal property without immediate change of possession void as against creditors and others.   But when we consider that the shares of stock were not tangible property, and that in their case the only tangible evidence of the property were the certificates which were in the possession of B., it becomes very clear that such section has no application any more than it would to any chose in action evidenced by a writing, where upon transfer of such chose in action the evidence thereof was delivered to the transferee.

Appellant contends that in this case, inasmuch as service of summons and complaint upon A, was under an•order of publication and therefore constructive, and inasmuch as no property of A.'s was levied upon under the attachment, the court acquired absolutely no jurisdiction to render judgment against A., but in this the appellant is clearly in error, as the attachment would be good as against the equity held by A. in and to such stock.   It follows that the sale upon the execution would be good as to such equity.

The judgment appealed from is reversed, and the lower court is directed to make conclusions of law and render judgment in conformity with this opinion.