[Civ. No. 1012.   Third Appellate District.—December 24, 1912.]

CALIFORNIA TRONA COMPANY (a Corporation), Appellant, v. GUY WILKINSON, THE FOREIGN MINES DEVELOPMENT COMPANY, LIMITED (a Corporation), and E. J. BOYES, Respondents.

CORPORATIONS—ISSUANCE OF STOCK OR BONDS—CONSIDERATION—CONSTRUCTION OF CONSTITUTION.—The provision of section 11 of article XII of the constitution that: "No corporation shall issue stock or bonds, except for money paid, labor done, or property actually received," does not mean that the consideration so expressed should be of equal value with the stock issued, so long as the transaction is a real one, based upon a present consideration, and having refer-

ence to legitimate corporate purposes, and tending to redound to the benefit of the corporation, and is not a mere device to evade the law and accomplish that which is forbidden.

ID.—PURPOSE OF PROVISION OF CONSTITUTION.—The purpose of such provision of the constitution is to preserve at all times the property of the corporation, and protect the rights of the creditors and stockholders thereof, and to prevent the stock from being transferred or disposed of without a sufficient consideration either in money or property or labor performed for it.

ID.—QUESTION OF ADEQUACY AND INADEQUACY OF CONSIDERATION.— Though the creditors might complain of an inadequate consideration, neither the corporation nor its stockholders can complain thereof; and if there is shown to be any consideration for the issuance by the corporation plaintiff of its stock, though inadequate, viewed from the standpoint of value, such transaction cannot be assailed by the corporation or its stockholders. But it is held that the facts disclosed clearly show that the plaintiff corporation received under the circumstances, under which its stock was issued to the defendant, an adequate consideration.

ID.—CONSIDERATION FOR STOCK—LARGE LOAN TO PLAINTIFF FOR DEVELOPMENT OF UNDEVELOPED MINES—MORTGAGE—STOCK AS "ADDITIONAL PROFIT" FOR ADVANCES.—It can seldom, if ever, be said that the capital stock of a mining corporation whose properties are undeveloped is worth its par value. It cannot be said that the stock of the plaintiff at the time of the transaction was worth any where near such value, but its value then was purely tentative and problematical, and where it made application to defendant for a large loan of fifty thousand dollars, which in the outcome exceeded seventy-five thousand dollars, secured by mortgage at six per cent, in consideration of which the stock in question was issued by plaintiff to defendant as "additional profit" for such advances, as an inducement to such loan, the consideration for the stock is sufficient.

ID.—MANDATES OF CONSTITUTION JUSTIFIED AS TO STOCK SO ISSUED.— Under the circumstances so appearing, it is apparent that the stock so issued was an inducement to the loan requested by the plaintiff and granted by the defendant, without which the loan might not have been made; and that its issuance complied with the mandates of the constitution, and could not be assailed for fraud. It is clear that the stock was issued for a valuable consideration in the form of money and for the purposes of the corporation issuing it, and that is all that is required by the provisions of section 11 of article XII of the constitution to make it a perfectly valid transaction.

ID.—"BONUS" STOCK GIVEN AS INDUCEMENT FOR LOANS.—Even if the stock issued to the plaintiff may be said to have constituted a "bonus," still, it having been given as an inducement to the loan

it cannot be held to be void or even voidable for the reason that the word "bonus" may in its natural import be said to imply a gift or gratuity. "Bonus stock" technically and perhaps correctly speaking is stock issued to purchasers of bonds as an inducement to them to purchase bonds or loan money to the corporation.

ID.—ESTOPPEL OF PLAINTIFF TO URGE ULTRA VIRES.—It is not possible that the corporation plaintiff, may through an *ultra vires* transaction of its own making, receive something beneficial or advantageous to its corporate purposes, and then escape the burden of the obligations to which such transaction bound it, upon the plea of *ultra vires*.

APPEAL from an order of the Superior Court of Alameda County dissolving a temporary restraining order. F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

Bishop, Hoefler, Cook & Harwood, Reed, Black & Reed, R. H. Countryman, and J. W. Bingaman, for Appellant.

Charles W. Slack, for Respondents.

HART, J.—The plaintiff is a corporation organized and existing under the laws of the state of California, with its principal place of business in the city of Oakland, this state.

The defendant, The Foreign Mines Development Company, Limited, is a corporation organized and existing under and by virtue of the laws of the United Kingdom of Great Britain and Ireland.

The defendant, Guy Wilkinson, was, at all the times referred to in the complaint, the manager of the defendant corporation and as such had sole charge of its business in the state of California.

It is alleged in the complaint that on the twelfth day of November, 1908, "a certificate purporting to show that said defendant, The Foreign Mines Development Company, Limited, was the owner of one hundred shares of the capital stock of said California Trona Company, was issued to said defendant, the Foreign Mines Development Company, Limited; that said certificate was numbered 29; that said defendant . . . paid no money for said one hundred shares of stock or any part thereof; that said defendant . . . did no labor for said

. . . shares of stock, or any part thereof; that said defendant . . . delivered no property for said . . . shares of stock, or any part thereof; that said defendant . . . neither paid nor rendered any consideration whatsoever for said stock purporting to have been issued to it, or any part thereof, and the issuance of said certificate to said defendant . . . was wholly illegal and void, and did not constitute said defendant . . . a stockholder of said California Trona Company; that upon the so-called issuance of said certificate to said defendant . . . the name of said The Foreign Mines Development Company, Limited, was entered upon the corporate records as the owner of said one hundred shares of stock.''

The complaint further shows that the certificate of shares so issued to the defendant corporation was surrendered to the secretary of plaintiff, who was directed by the said corporation defendant to issue, and upon such direction did issue, a new certificate in lieu thereof to one S. Walker Janes, the agent of said defendant corporation; that on the same day there was also issued to said Janes a certificate for five shares of the capital stock of plaintiff; that on the eighteenth day of April, 1911, said defendant corporation caused said certificates, aggregating one hundred and five shares of the capital stock of plaintiff, issued to said Janes as stated, to be surrendered to the secretary of plaintiff, who, upon the direction of said defendant corporation, issued in lieu thereof to the defendant, Wilkinson, a certificate for one hundred and five shares of the capital stock of the plaintiff.

It is further alleged that the plaintiff, on the fifth day of November, 1908, executed and delivered to the said defendant corporation a mortgage on all its real and personal property situated in the state of California, and that on the twenty-seventh day of November, 1909, said defendant corporation commenced an action in the circuit court of the United States in and for the northern district of California to foreclose said mortgage; ''that said action is now pending in said court; that judgment has not yet been rendered in said action; that a meeting of the stockholders of plaintiff for the purpose of electing a board of directors will be held at the office of the plaintiff, in the city of Oakland, on the 3d day of May, 1911, at the hour of 10:30 A. M.; that said defendant,

Guy Wilkinson, threatens to vote at said meeting the said one hundred shares of stock so illegally issued as aforesaid.''

It is charged that, on the tenth day of April, 1911, said The Foreign Mines and Development Company, Limited, acting through said defendant, Guy Wilkinson, as its agent and manager, entered into an agreement with certain of the stockholders of plaintiff (naming them) whereby it was in effect agreed that said stockholders would vote with Wilkinson for the purpose of calling a meeting of the stockholders of the plaintiff for the third day of May 1911, and that, at such meeting, said stockholders (parties to said agreement) would ''cast, or cause to be cast, the votes to which the said number of shares shall entitle such party of the first part in filling vacancies in the board of directors of the said corporation for such persons as shall be indicated by the party of the second part, through its managing director, Guy Wilkinson,'' etc.

It is alleged that the one hundred shares of stock so illegally issued to the defendant corporation and finally to said Wilkinson will, in conjunction with the shares held by the said persons who are parties to the agreement above referred to, constitute a majority of all the capital stock of the plaintiff, and that, therefore, if said Wilkinson is permitted to vote said one hundred shares of stock he will control said election of directors to be held on the third day of May, 1911.

It is charged that the purpose of said defendant corporation and Wilkinson ''in seeking to control the election of the board of directors of plaintiff is to compromise said foreclosure suit now pending in the said circuit court of the United States by causing plaintiff to confess judgment therein in favor of said The Foreign Mines Development Company, Limited; that in said foreclosure suit there is a controversy as to the amount of the debt secured by said mortgage, said defendant . . . claiming that there is due from said plaintiff a sum nearly twice as great as the sum which plaintiff admits is due.''

The complaint declares that, unless a temporary restraining order is issued whereby said defendant, Wilkinson, is prevented from voting said one hundred shares of stock ''at said meeting of stockholders to be held on the 3rd day of May, 1911, or at any time to which said meeting is adjourned, great and irreparable injury will result to the plaintiff and its stockholders.''

Plaintiff prays judgment: That said one hundred shares of stock was illegally issued and that the certificate therefor be delivered up and canceled, and that, pending the determination of this issue, and until the further order of the court, said Wilkinson, his agents, etc., etc., be restrained ''from voting said one hundred shares of stock at the said meeting of stockholders to be held on the 3rd day of May, 1911, or at any time to which said meeting may be adjourned.''

Upon the complaint (verified) the court granted a temporary restraining order, requiring said Wilkinson and his agents, etc., to desist and refrain from voting said shares of stock at the stockholders' meeting, to be held May 3, 1911, or ''at any time to which said meeting may be adjourned.''

Said temporary restraining order was issued on the second day of May, 1911.

On the fourth day of May, 1911, the defendants, by a verified answer, replied to the complaint and at the same time served upon the plaintiff and its attorneys a notice of motion to dissolve the temporary restraining order issued as above indicated.

The answer denies all the equities of the complaint, at the same time admitting certain averments thereof, and then, by way of a special defense, sets forth in detail the transaction between the plaintiff and the defendant corporation whereby the latter became the owner of the one hundred shares of stock of the plaintiff referred to in the complaint, and from which it appears that, on the first day of August, 1908, the said plaintiff and the defendant corporation entered into an agreement in writing, the terms of which, insofar as they are important to the question here, are, in substance, as follows:

That the said defendant agreed to advance to the plaintiff the sum of fifty thousand dollars, more or less, with which to develop certain mining properties owned by the latter in the state of California; that, for the purpose of erecting a plant, etc., upon said properties, the sum of twenty-five thousand dollars was to be advanced, upon a favorable report by an engineer, selected for the purpose of investigating said properties, that the representations of the plaintiff as to the character and extent of the minerals contained therein were true; that, after the completion of said plant, the said defendant ''shall deposit in said bank (First National Bank, of Oakland,

California) such additional sums as shall be called for from time to time by said company (plaintiff), such additional sums, however, not to exceed in the aggregate the sum of twenty-five thousand dollars''; . ... ; that, ''as profit to the contractor (defendant corporation) for the advance of $50,000.00 there shall be delivered to the contractor 6¼ per centum of the gross sale value in San Francisco of all products of said claims marketed by said company, for a period of operation, which in the aggregate shall be equivalent to the continuous operation of such plant for a period of three hundred days at full capacity.'' After making provision for a reduction of the per centum of the gross sale value of the products of said properties to be paid to the said defendant in case the full sum of fifty thousand dollars is not so advanced and for an increase thereof in the event that a greater sum than fifty thousand dollars is so advanced, the contract proceeds: ''Sixth. As additional profit to said contractor (defendant corporation) for the advance of the sum of fifty thousand dollars, more or less, as above provided, said company (plaintiff) shall, upon receipt of the first payment of twenty-five thousand dollars, issue and deliver to said contractor or its nominees one hundred shares of the capital stock of said company, of the par value of one thousand dollars per share.''

It is then provided that the ''said sum of fifty thousand dollars, or such other sum as shall be advanced as aforesaid by the contractor, shall be secured by a first mortgage to the contractor or its nominee upon the property of the company,'' etc.

In accordance with the provisions of the foregoing agreement, the answer alleges, the defendant, on the fifth day of November, 1908, deposited to the credit of, and advanced to, the plaintiff the sum of twenty-five thousand dollars and that, on the twenty-ninth day of November, 1909, it advanced to the plaintiff additional sums, exceeding the sum of fifty thousand dollars, making in all so advanced by the defendant corporation to the plaintiff a sum exceeding that of seventy-five thousand dollars.

The answer admits and alleges that the plaintiff, in pursuance of the terms of said agreement, executed to the defendant corporation ''a mortgage on all its real and personal property situated in the state of California, which said mortgage was duly recorded in the offices of the county recorders

of San Bernardino and Inyo counties, state of California, in which the said property is situated." It is admitted that an action for the foreclosure of said mortgage is now pending in the United States circuit court for the northern district of California, and that no judgment has yet been rendered in said action; admits the agreement entered into between the defendant Wilkinson and certain other stockholders of the plaintiff, as set forth in the complaint, and that the stock held by said Wilkinson and that of said stockholders would, together, constitute a majority of the shares of the capital stock of plaintiff; denies that there was to be an election of directors of plaintiff at the meeting to be held on the third day of May, 1911; denies that Wilkinson would have controlled the election of directors at said meeting; admits that there is a controversy as to the amount of the debt secured by the said mortgage, and that the defendant corporation claims a sum nearly twice as great as the sum which the said plaintiff admits in said foreclosure suit is due, but denies that the purpose of the defendant corporation and Wilkinson in securing control of the board of directors of the plaintiff "is to compromise the said foreclosure suit, now pending in the said circuit court of the United States, by causing the plaintiff to confess judgment therein in favor of the said defendant corporation," etc.

The plaintiff replies to the averments of the answer by an affidavit denying that there was any consideration rendered by the defendant for the one hundred shares of stock "other than the so-called and alleged consideration set forth in said contract," referring to the agreement between the plaintiff and the defendant corporation.

Upon the record, of which the foregoing is a synopsis, the court, on the fifteenth day of May, 1911, made an order granting the motion of the defendants to dissolve the temporary restraining order.

This appeal is by the plaintiff from said order dissolving the temporary restraining order.

The contention of the appellant is that the purported issue of one hundred shares of stock by the plaintiff to the defendant corporation is unlawful and void under the terms of section 11 of article XII of the constitution of this state.

The respondents not only controvert the position thus taken by the appellant, but vigorously insist that the order from

which this appeal is prosecuted may and should be upheld for the asserted reason that the granting of the temporary restraining order was in direct violation of the mandates of section 527 of the Code of Civil Procedure, as amended by the legislature of 1911 (Stats. 1911, p. 59), whereby a radical innovation on the former practice with respect to the issuance of temporary restraining orders has been brought about.

The respondents also make the point that the plaintiff has not, by its complaint, shown itself to be entitled to favor from a court of equity in the matter as to which it seeks relief.

While we recognize in the last stated contentions of respondents considerable force, it is not conceived to be necessary to consider them, since we are of the opinion that, upon the merits of the controversy, the order appealed from must be sustained.

We are unable to make out how or in what way the transaction complained of by the plaintiff may be held to be in opposition to the provisions of section 11 of article XII of the constitution, and, unless it can be said to be obnoxious to the objection so made, then the act of transferring the stock to the defendant corporation was in all respects *bona fide* and legal, there being no showing or even pretense of extrinsic fraud in connection therewith.

The section of the constitution, with the terms of which it is claimed the transaction involved here is in conflict, reads, in part, as follows: "No corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void."

The purpose of those provisions of the constitution is, of course, to preserve at all times the property of the corporation and thus protect and maintain the rights of the creditors and stockholders thereof as against any such manipulation or disposal of the capital stock by the owners of a majority of such stock as might result in the serious impairment if not the complete destruction of the rights of such creditors and the minority stockholders and at the same time in advantage to such majority stockholders—a situation which experience shows could easily be brought about if the law were otherwise than as laid down by the provisions of the constitution above quoted. In other words, the design of said provisions is

among other things, to prevent the corporate stock of a corporation from being transferred or disposed of by it without a sufficient consideration, either in the form of money, or property or labor performed for it. But by this we are not to be understood as meaning a consideration equal in value with the stock, for we do not think that the constitutional inhibition invoked here requires such a consideration to render valid the issue of stock by a corporation. If there is a consideration of some sort and the transaction is one that is intended to redound to the benefit of the corporation in the prosecution of its corporate purposes, then we should say that, so far as are concerned the requirements of the law in that regard, the consideration is sufficient, and, in a sense, adequate, although it may not be equal in value to that of the stock. In any event, in the case of the issuance of stock by a corporation for an inadequate consideration, viewed from the standpoint of value, such transaction cannot be assailed by the stockholders, or, which is the same thing, by the corporation itself, merely upon the ground of such inadequacy of consideration. "Creditors may attack the transaction—stockholders cannot." (*O'Dea* v. *Hollywood Cemetery Assoc.*, 154 Cal. 67, [97 Pac. 6].) So, in this case, if there be shown any consideration at all for issuance of the stock, then the plaintiff is in no position to challenge the transaction resulting in its issuance or the validity of such issue solely upon the ground of the inadequacy of the consideration in the sense that there is a marked or wide disparity, unfavorable to the stock, between the value of the latter and that of the consideration given therefor. Upon this proposition, assuming that the record discloses some consideration for the issuance of the stock to the defendant, we could rest the decision of this case. But we are of the opinion that the facts disclosed here clearly show that the plaintiff received, under the circumstances under which the stock was issued, an adequate consideration.

There is nothing in the record before us showing what the actual value of plaintiff's stock was, unless the par value thereof is to be assumed to be its actual value, which assumption is not warranted by the other facts disclosed by the record. The complaint is absolutely silent as to the actual value of said stock at the time of the transaction culminating in its transfer to the defendant. It merely alleges that the stock,

having a par value of one thousand dollars per share, was issued and delivered to the defendant corporation, without any of the several kinds of consideration for which it may legally be issued. On the other hand, the answer declares "that the consideration for the issuance and delivery to the defendants . . . of the said one hundred shares of the capital stock of the plaintiff and of the said certificate No. 29 therefor, was the advance by the defendant . . . of the sums provided by it to be advanced under the terms of said contract," etc., and that "the same was a good and valuable consideration."

Of course, it can seldom, if ever, be said that the capital stock of a mining corporation whose properties are undeveloped is actually worth its par value. It certainly cannot be said that the stock of the plaintiff, at the time of the transaction here, was worth its par value or anything near such value. The fact is that the properties of the plaintiff which were related to the transaction involved in this dispute were in a condition and of a character that it could not be told, at the time of said transaction, what actual value the stock issued to the defendant possessed, if very much of any when compared to the amount of money the plaintiff asked the defendant to loan to it. Manifestly, the value of said stock, at the time of the transaction involved here, insofar as such stock might have any actual value from the fact of plaintiff's ownership of the properties to develop which it borrowed money from the defendant (and it does not appear that it owned any other property), was purely tentative, or extremely problematical, as all undeveloped mining enterprises, from their very nature, must necessarily be, for whatever actual value it might acquire would, of course, have to depend and be determined upon the result of the experimental development of its said mining properties. It is, therefore, proper to say, from all the facts presented by this record, that the actual value of the stock transferred to the defendant corporation was at the time of the issuance of said stock, very far short of its par value, if, indeed, it had any value at all as profit-producing property. We, therefore, have this situation here: That the plaintiff was the owner of certain mining claims, the value of which as such was unknown, and that it was in need of the means necessary for the development of said claims; that it made an application to the defendant corporation for the loan of certain

moneys to be used for that purpose, and its application was granted, the defendant corporation, upon an examination of the proposition, agreeing to advance the money required—the sum of fifty thousand dollars, more or less—in consideration of a promise upon the part of the plaintiff to do these things: 1. To execute and deliver to the said defendant a mortgage upon all its mining properties situated in the state of California and to develop which the loan was to be made, the money so loaned to bear interest at the rate of six per cent per annum; 2. To pay and deliver to the said defendant, as a "profit" to it, a certain per centum of the gross sale value in San Francisco of all products of said claims marketed by the plaintiff, the amount of such per centum to be regulated according to the amount of money so advanced by the defendant; 3. As "additional profit" to the defendant, and upon receipt by it (plaintiff) of the first payment of twenty-five thousand dollars, to issue and deliver to the defendant, or to any person or persons it might name to receive the same, one hundred shares of stock of plaintiff of the par value of one thousand dollars per share.

The plaintiff assented to the foregoing propositions, and not only executed an agreement in writing to that effect but executed the terms of the agreement, and thereupon received from the defendant the first advance of twenty-five thousand dollars and thereafter, from time to time, received other sums until the total amount so received exceeded the sum of seventy-five thousand dollars. It seems to us that, under the circumstances as thus indicated, it must be held to be true that the stock involved in this litigation was issued to the defendant corporation for a consideration which, whatever its value was when compared to the actual value of the stock, not only satisfied the mandates of the constitution, but which, even in a suit by creditors to cancel the stock on the ground of fraud in its issuance, could hardly be held to be such in itself to justify the inference of fraud, either as a matter of law or of fact.

It is very clear that the issuance of said stock to the defendant, under the circumstances disclosed here, was one of the chief inducements of the loan. Indeed, it is, we think, from a consideration of the whole transaction, proper to assume that but for the agreement of the plaintiff to so transfer one hundred shares of its stock to the defendant, the latter would not

have agreed to advance to the former the large sum of money which was actually advanced.

However that may be, it is very clear that the stock was issued for a valuable consideration in the form of money and for the corporate purposes of the corporation, and that is .all that is required by the provisions of section 11 of article XII of the constitution to make it a perfectly valid transaction.

Provisions in the constitutions of other states similar to those involved in this discussion have been considered by the courts of those jurisdictions as well as by the supreme court of the United States and they have thus uniformly been held not to mean that the consideration should always be of equal value with the stock issued, so long as "the transaction is a real one, based upon a *present consideration,* and having reference to legitimate corporate purposes, and is not a mere device to evade· the law and accomplish that which is forbidden." (*Memphis etc. R. R. Co.* v. *Dow,* 120 U. S. 287, 299, [30 L. Ed. 595, 7 Sup. Ct. Rep. 482] ; see, also, *Grant* v. *East and West R. Co.,* 54 Fed. 569, 575, 576, [4 C. C. A. 511] ; *Nelson* v. *Hubbard,* 96 Ala. 238, 250, [17 L. R. A. 375, 11 South. 428] ; *Speer* v. *Bordeleau,* 20 Colo. App. 413, [79 Pac. 332] ; Const. of Alabama [1875], art. XIV, sec. 6; Colorado Const., art. XV, sec. 9.)

Even if the stock issued to the plaintiff may be said to have constituted a "bonus," as is the contention, ·still, it having been given as an inducement to the loan, it cannot be held to be void or even voidable for that reason. While the word "bonus" may, in its natural import, be said to imply a gift or gratuity, "bonus stock, technically, and perhaps correctly speaking, is stock issued to the purchasers of bonds as an inducement to them to purchase bonds or loan money to the corporation." (Thompson on Corporations, 2d ed., sec. 3444.)

In *Dickerman* v. *Northern Trust Co.,* 176 U. S. 181, [44 L. Ed. 423, 20 Sup. Ct. Rep. 311], where it was contended that certain stock was issued without a consideration to the purchasers of bonds of the corporation there concerned, it is said: "It is true that these parties, in disposing of the bonds, allowed to each purchaser of a one thousand dollar bond two hundred dollars of preferred and four hundred of common· stock, but they do not seem to have profited by this themselves. *And if it were necessary to the negotiation of the bonds to give a*

*bonus in that stock, it cannot be considered in the light of a
mere donation.*   (Italics ours.)   Nor, if it were done in good
faith, would it necessarily afford a ground of complaint to dis-
senting stockholders.''

We have no fault to find with the cases cited by counsel for
the plaintiff, notably the case of *Central Trust Co.* v. *New
York City etc. Co.,* 18 Abb. N. C. (N. Y.), 381, which held that
stock issued by a corporation without any consideration is
illegal, and that such issue may be set aside upon that ground.
Indeed, obviously, the views expressed here are in perfect
harmony with those announced in those cases.

In the Central Trust case, just mentioned, the transaction
whereby certain parties secured, without any consideration
whatsoever, a large amount of the bonds and stock of the cor-
poration, came so close to actual fraud that the learned jus-
tice who wrote the opinion found no way of relieving it from
that imputation except upon the ground that such a method
of manipulating bonds and stocks of corporations had been for
many years a common practice in that line of the world's
activities.   Obviously, if, as in that case, the corporation here
had parted with a large amount of its capital stock without
any sort or kind of consideration—indeed, by gift pure and
simple, as in that case—then most unquestionably would the
transaction be held to have been in direct violation of the pro-
visions of section 11 of article XII of the constitution; but, as
an examination of this record clearly and distinctly discloses,
there was a consideration and a most valuable one for the issu-
ance of the stock by the plaintiff to the defendant.

As stated in the beginning, a discussion of other points made
by the respondents in support of the order dissolving the re-
straining order is altogether unnecessary in view of the opin-
ion as to the merits of the dispute to which we have been per·
suaded by an examination of this record; yet, we cannot
refrain from observing that the plaintiff is in an awkard posi·
tion as a supplicant for relief through the extraordinary reme-
dial power of a court of conscience.   It does not complain that
it has received no benefits from the act of issuing the stock
to the defendant.   It does not charge actual fraud whereby it
suffered any injury, nor, indeed, urge any objection which
would render the transaction unconscientious; but, after com-
placently acquiescing therein for a long time and recognizing

the validity of the stock issue by various positive acts (such as issuing new certificates for the old, etc.) and after the transaction had been a thing of the past by a number of years, it merely relies, for the establishment of the invalidity of the issue, upon what may well be regarded, at least before a court of equity, as an alleged technical violation of the law of this state concerning the matter of the issuance of stock by corporations. Of course, it is not possible that a corporation may, through an *ultra vires* transaction of its own making, receive something beneficial or advantageous to its corporate purposes, and then escape the burden of the obligations to which such transaction bound it upon the plea of *ultra vires*.

But, as shown, upon the merits of this controversy, the order should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.