P. E. SHUGART, Appellee, v. F. L. MAYTAG et al., Appellants.

**CORPORATIONS:** Creditor's Action to Collect Unpaid Installments
1   on Stock—Maturity. Actions by creditors of an insolvent corporation against stockholders, to enforce a *primary* liability for unpaid installments on the purchase price of stock, accrue on the date *when the creditors' claim matures against the corporation*, and not on the date *when the corporation's claim matures against the stockholder.*

**CORPORATIONS:** Unpaid Installments on Stock—Constitutional
2   Law—Foreign State. Section 441 of the Civil Code of South Dakota, providing that stockholders are primarily liable to creditors on unpaid installments of the purchase price of stock, is not unconstitutional because violative of Sec. 8 of Art. 17 of the Constitution of said state, which prohibits the issuance of corporate stock "except for money, labor done or money or property actually received."

**ESTOPPEL:** Plea Based on Violation of Law—Corporate Stock.
3   He who subscribes for and receives corporate shares of stock, without complying with a law which commands him to make payment therefor, may not, when sued by a corporate creditor for unpaid installments, plead that his failure to make payment for the stock rendered void the issuance of the stock.

**CORPORATIONS:** Unpaid Stock—Innocent Purchaser. The pri-
4   mary liability of a stockholder to creditors of the corporation for unpaid installments on the purchase price of stock, under Section 441 of the Civil Code of South Dakota, follows the stock into the hands of a subsequent purchaser without knowledge that payment had not been made.

**CORPORATIONS:** Stock Issued for Unperformed Labor. The issu-
5   ance of corporate stock for labor which was never performed, is not binding on a creditor of the corporation seeking to enforce a statutory liability for unpaid stock.

**CORPORATIONS:** Liability of Transferor of Unpaid Stock. The
6   transfer for a nominal consideration of corporate stock, made after demand by a corporate creditor for the satisfaction of his claim, and not entered on the transfer books of the corporation, may not, under Section 423 of the Civil Code of South

Dakota, be interposed against the creditor's action to collect of the transferor unpaid installments on the purchase price of the stock.

CORPORATIONS:    Unpaid Stock—"Stockholder" Defined.    Just 7 how one becomes a stockholder of a corporation, provided the stock stands in his name on the books of the corporation, is quite immaterial, under Section 441 of the Civil Code of South Dakota.

*Appeal from Jasper District Court.*—K. E. WILLCOCKSON, Judge.

MARCH 23, 1920.

SUIT in equity by a creditor of a South Dakota corporation against certain stockholders, who, it is alleged, have paid only a portion of the face value of the stock held by them. There was judgment and decree in the court below in favor of plaintiff. Defendants appeal.—*Affirmed.*

*C. O. McLain, Joe Kirby,* and *Henderson, Fribourg & Hatfield,* for appellants.

*Bert B. Welty, Lee & Garfield, C. W. Garfield,* and *J. E. Cross,* for appellee.

STEVENS, J.—The South Dakota Central Railway Company is a corporation, organized under the laws of South Dakota, with its principal place of business at Sioux Falls, in that state. Plaintiff, in 1914, performed services therefor, for which there was, on December 1, 1914, due and owing him the sum of $24,708.46. After the completion of the services for which he was employed, the railway company went into the hands of a receiver, and all of its assets were sold on execution in favor of the bondholders. All defendants admit that plaintiff rendered the services claimed, and that the amount stated is due him from the corporation.

1. CORPORATIONS: creditor's action to collect unpaid installments on stock: maturity.

Plaintiff alleged in his petition that the contract for said services was oral, and was entered into in the state of South Dakota; that the defendants were, at the time of the commencement of this suit, the owners and holders of stock in said corporation as follows: F. L. Maytag, 9,569 shares; E. H. Maytag, 52 shares; L. B. Maytag, 212 shares; and Sam Fantle, 340 shares; that the par value of said stock was $100, and that 87½ per cent thereof remained unpaid.

Plaintiff further alleged that Section 441 of the Civil Code of South Dakota, copy of which is set out in the petition, makes each stockholder of a corporation individually and personally liable for the debts of the corporation, to the extent of the amount unpaid upon the stock held by such stockholder. Other provisions of the Code are also set out in plaintiff's petition, which will be referred to hereafter. The Maytags and Fantle filed separate answers, in both of which it is alleged that Section 441 contravenes the provisions of Section 8, Article 17, of the Constitution of South Dakota, and that same is, therefore, void, and of no effect. Other constitutional provisions are pleaded, which it is unnecessary to set out at this time. Defendants also set up the statute of limitation; and the Maytags, that they obtained the stock without notice or knowledge that same had not been paid for in full. Other material issues and facts will be referred to in the course of the opinion. The trial resulted in a judgment against F. L. Maytag and Sam Fantle for the full amount of plaintiff's claim, and against E. H. Maytag for $4,719, and against L. B. Maytag for $21,780.

I. The defendant Fantle, at the time the services were rendered by plaintiff, was a resident of Sioux Falls, South Dakota, where he has continued to reside. His plea of the statute of limitations is bottomed upon the thought that a cause of action in favor of the corporation for the unpaid portion of the purchase price of the stock arose immediately upon the sale thereof, and, under Section 60 of the

Code of Civil Procedure of South Dakota, became barred in six years, thereby ceasing to be an enforcible liability against the stockholders; and that, as the liability of the corporation to plaintiff grows out of the obligation of the stockholders to the corporation, the bar was complete when this suit was begun. All of the stock held by the defendants was issued and sold by the railway company more than six years before the services rendered by plaintiff were begun.

On the other hand, counsel for appellee asserts that the statute did not commence to run until plaintiff's cause of action against the corporation matured. There may be some lack of harmony in the decisions upon this question, but the general rule undoubtedly is that the statute commences to run in favor of the stockholders from the time claims of creditors against the corporation mature. Under the law of South Dakota, the liability of the holder of corporate stock to creditors of the corporation for the difference between the par value thereof and the amount actually paid thereon is primary, and a creditor is not required to first proceed against the corporation. It is stated in Cook on Corporations (7th Ed.), Section 225, that:

"Where the liability of the stockholder is immediate and primary, and not contingent on the obtaining of a judgment against the corporation, it is clear that the statute of limitations begins to run in favor of the stockholder when the debt matures against the corporation."

We find, upon examination of the authorities cited, that much of the apparent lack of harmony appearing therein is due to the dissimilarity of the various statutory provisions considered. In some jurisdictions, the statute does not commence to run against creditors until the insolvency of the corporation; but it makes no difference in this case whether the statute commenced to run from the maturity of plaintiff's claim against the railway company, or its insol-

vency. The services were rendered before the appointment of the receiver. The cause of action which plaintiff seeks to enforce against the defendants is not, however, one that arose in favor of the corporation, but is a liability which, under the South Dakota statute, accrued directly to him. The capital stock of a corporation is a fund for the payment of debts—a trust fund. The doctrine of the so-called trust fund rests upon the proposition that, as the state has relieved the stockholder from general liability for the debts of the corporation, he ought, in good faith, to pay, in money or its equivalent, to the extent of the face value of the stock received. The corporation may never demand payment of any unpaid portion of the purchase price of said stock. Payment may not be necessary until the rights of creditors intervene, and their claims must be met. Surely, a cause of action which could not accrue until more than six years after the issuance of the stock held by the defendants, cannot be barred by the statute of limitations, and the overwhelming weight of authority sustains the rule quoted from Cook on Corporations. *Parmelee v. Price*, 208 Ill. 544 (70 N. E. 725) ; 1 Cook on Corporations (7th Ed.), Section 225; *Chapman v. Lynch*, 156 N. Y. 551 (51 N. E. 275, 276).; *West v. Topeka Sav. Bank*, 66 Kan. 524 (97 Am. St. 385) ; *O'Neill v. Quarnstrom*, 6 Cal. App. 469.

II. Section 441 of the Civil Code of South Dakota is as follows:

"Each stockholder of a corporation is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by

him. Any creditor of the corporation may

2. CORPORATIONS: unpaid installments on stock: constitutional law: foreign state.

institute joint or several actions against any of its stockholders that have not fully paid the capital stock held by him, and in such actions the court must ascertain the amount that is unpaid upon the stock held by each stock-

hòlder and for which he is liable, and several judgment must be rendered against each in conformity therewith. The liability of each stockholder is determined by the amount unpaid upon the stock or shares owned by him at the time such action is commenced, and such liability is not released by any subsequent transfer of stock. And in no other case shall the stockholders be individually and personally liable for the debts of the corporation. The term 'stockholder,' as used in this section, shall apply not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock, although the same appear upon the books in the name of another.''

The provisions of the above section are assailed by counsel for appellant, upon the ground that same contravenes the provisions of Section 8, Article 17, of the Constitution of South Dakota, which is as follows:

"No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and indebtedness of corporations shall not be increased except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock first obtained, at a meeting to be held after sixty days' notice given in pursuance of law."

They also state that it contravenes the provisions of the Fourteenth Amendment to the Constitution of the United States, and is, therefore, void. Section 423 of the Civil Code of South Dakota provides that:

"Whenever the capital stock of any corporation is divided into shares and certificates thereof are issued, such shares of stock are personal property, and may be transferred by endorsement by the signature of the proprietor or his attorney or legal representative and delivery of the certificate, but such transfer is not valid except between the

parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties, by and to whom transferred, the number or designation of the shares, and the date of the transfer."

We have been unable to find any decision of the Supreme Court of South Dakota wherein the constitutionality of Section 441 has been passed upon or discussed; but counsel for appellee have cited numerous cases from other jurisdictions, construing similar constitutional provisions, to which attention will be directed presently. However, the decision of the Supreme Court of South Dakota in *Schiller Piano Co. v. Hyde,* 39 S. D. 74 (162 N. W. 937), is based upon a related proposition. In that case, the United Mercantile Agency, a South Dakota corporation, received $20,-000 in notes, in payment of the purchase price for certain shares of stock sold to the defendant. Certificates were issued and delivered to him. Thereafter, defendant gave the notes in suit, aggregating $10,000, in renewal of that much of his previous obligations. The notes were transferred to plaintiff, with notice of the consideration therefor, and, upon the refusal of defendant to pay the same, suit was brought thereon. The trial court directed a verdict in favor of the defendant, upon the ground that the original notes were void, because the transaction out of which their execution arose, was in violation of Section 8, Article 17, of the Constitution of that state. Upon appeal, the ruling of the trial court was reversed. In the course of the opinion, the court said:

"It seems to us that the decision of the trial court was wrong for either of three reasons: First, a promissory note is property, within the meaning of the constitutional provision; second, even though a promissory note is not property, within the meaning of such provision, the taking of a note for shares of stock is not unlawful,—it is the

delivery of the certificates under such a condition that would be unlawful; third, estoppel."

The court did not conclude its opinion with the finding that promissory notes, within the meaning of the constitutional provision, are property, but proceeded further, upon the assumption that they could not be so considered. The conclusion reached upon this assumption was that the original subscription for the stock was not unlawful; that, at most, the delivery of the certificates of stock was illegal; that the obligation of the subscriber was in no wise affected by the premature or illegal surrender of the certificates; and that the giving of promissory notes merely changed the form of defendant's obligation. It is true that the constitutionality of Section 441 was not involved in this case, but an obligation arising out of a subscription for shares of capital stock to a corporation, followed by a delivery of the stock before full payment, is therein held to be not invalid, under the constitutional provision quoted; that indebtedness created in this manner is bona fide, and the subscriber liable to the holder of his obligation given therefor. Section 441 goes no further than the holding of the court in the above case. The former creates a liability against the shareholder, in favor of creditors of the corporation, for the amount of the unpaid portion of the purchase price of the stock; whereas, the decision of the court goes to the extent of holding that a subscription and mere promise to pay for stock create a valid obligation. This conclusion has ample support in the decisions of other courts, dealing with similar constitutional provisions. *Washer v. Smyer,* (Tex.) 211 S. W. 985; *Olson v. State Bank,* 67 Minn. 267 (69 N. W. 904); *Dilzell Eng. & Const. Co. v. Lehmann,* 120 La. 273 (45 So. 138); *California Trona Co. v. Wilkinson,* 20 Cal. App. 694 (130 Pac. 190); *McWhirter v. First St. Bank,* (Tex.) 182 S. W. 682; *Herron Co.*

*v. Shaw*, 165 Cal. 668 (133 Pac. 488) ; *Vermont Marble Co. v. Declez Gran. Co.*, 135 Cal. 579 (67 Pac. 1057; 87 Am. St. 143) ; *Houston F. & M. Ins. Co. v. Swain*, (Tex.) 114 S. W. 149; *Lucey Co. v. McMullen*, 178 Cal. 425 (173 Pac. 1000) ; *Continental Trust Co. v. Toledo, etc., R. Co.*, 82 Fed. 642; *Scott v. Abbott*, 160 Fed. 573; *Memphis & L. R. R. v. Dow*, 120 U. S. 287 (30 L. Ed. 595).

We are not inclined, in view of what is said in *Schiller Piano Co. v. Hyde*, supra, and numerous other cases cited above, to hold that Section 441 of the Civil Code of South Dakota contravenes Section 8, Article 17, of the Constitution of that state. It is true that the Constitution of South Dakota makes the issuance of certain stock void, but we think this provision relates only to fictitious increases of stock, and not to stock issued for a valid consideration. Such is the conclusion announced in several of the cases cited supra, wherein practically the identical provision was discussed. No claim was made in the court below that Section 441 is in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States; hence, the contention of counsel upon this point cannot be considered upon this appeal. *Hass v. Leverton*, 128 Iowa 79.

III. The court, in *Schiller Piano Co. v. Hyde*, supra, further held that the defendant was estopped to deny liability upon the ground that the stock held by him was wrongfully issued. Upon this point, the court said:

3. ESTOPPEL: plea based on violation-of law: corporate stock.

"It is a maxim of jurisprudence that no man can take advantage of his own wrong. If the delivery of the certificate of stock to defendant, at the time it was delivered, was wrong, the defendant was a party to the wrong. 'He who consents to an act is not wronged by it.' In *German Merc. Co. v. Wanner*, 25 N. D. 479 (142 N. W. 463), we find the following:

" 'It is held in *Wight v. Shelby R. Co.*, 16 B. Mon. (Ky.) 4 (63 Am. Dec. 522), that, where it was the duty of the subscriber for capital stock to pay at the time the subscription was made, he could not exonerate himself from liability because he had been allowed to take advantage of his own wrong by not paying at that time.' The statement of facts at the beginning of this opinion discloses a situation that should forever estop defendant from asserting the constitutional provision as a defense. To hold otherwise would, in the language of Mr. Justice Holmes, be 'contrary to the rudiments of fair play.' "

The stock held by defendants was not fictitious, nor was it issued as a bonus, but for a valid consideration, and it is contended by counsel for the Maytags that it was paid in full, in cash and labor. The original subscribers were engaged in the promotion of a railroad enterprise, the building of which was either at the time under way, or begun shortly thereafter, as several miles of railroad were constructed, and are now in operation. Without reviewing in detail the many authorities cited by counsel, attention is called to the following, which support the doctrine of estoppel. *Washer v. Smyer*, supra; *Dilzell Eng. & Const. Co. v. Lehmann*, supra; *Vermont Marble Co. v. Declez Gran. Co.*, supra; *McWhirter v. First St. Bank*, supra; *California Trona Co. v. Wilkinson*, supra; *Perkins v. Cowles*, 157 Cal. 625 (137 Am. St. 158); *Vaughn v. Alabama Nat. Bank*, 143 Ala. 572 (42 So. 64); *Building & Loan Assn. v. Chamberlain*, 4 S. D. 271 (56 N. W. 897); *Lilylands Canal & Res. Co. v. Wood*, 56 Colo. 130 (136 Pac. 1026); *Shaw v. Staight*, 107 Minn. 152 (119 N. W. 951); *Olson v. State Bank*, 67 Minn. 267 (69 N. W. 904). It should be said in this connection that none of the stock held by Fantle was purchased from the corporation, although a few shares were issued to him direct thereby.

IV. Counsel for appellant Fantle argues at length that he purchased the stock held by him without notice; that it was not fully paid for; and that he is, therefore, an innocent holder, and cannot be held liable for any portion of the unpaid purchase price thereof. It is doubtful whether appellant, under the issues, is entitled to urge this defense at this time; but, in view of the interpretation of Section 441 of the Civil Code of South Dakota adopted, it is, perhaps, not material. · It will be observed that this section provides that "each stockholder of a corporation is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by him," and defines the term "stockholder" as follows:

4. CORPORATIONS: unpaid stock: innocent purchaser.

"The term 'stockholder' as used in this section shall apply not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock, although the same appears upon the books in the name of another."

Under the above statutes, appellant was a stockholder. According to the undisputed evidence, same had been issued upon the payment of a small percentage of the par value thereof. The language of Section 441 is, "*each stockholder.*" No limitation is placed thereon, nor do we find anything in the language of said section from which the inference may be drawn that it was the intention of the legislature to exempt subsequent purchasers of stock, even without notice, from liability for the unpaid portion of the purchase price. It is urged by counsel that to so hold will seriously interfere with the sale of stock, but this affords little reason for giving a forced or strained construction to the statute. The means of knowing whether the stock has been paid for is certainly available to a person desiring to purchase stock in any reputable concern, and the burden

of ascertaining this fact should not create a serious obstacle
in the way of stock transactions. The liability imposed by
the statute, it seems to us, must be held to follow the stock.
It is a liability imposed upon the stockholder. It is de-
signed for the protection of creditors, and was not enacted
for the benefit of stockholders. It is true that the courts
are divided upon the question as to the liability of an inno-
cent purchaser of stock, but we are controlled in this case
by the statute of South Dakota, and must give effect there-
to. As sustaining our conclusion, attention is called to the
following cases: *Bartlett v. Stephens,* 137 Minn. 213 (163
N. W. 288); *Axford v. Western Synd. Inv. Co.,* 141 Minn.
412 (170 N. W. 587); *Webster v. Upton,* 91 U. S. 65 (23 L.
Ed. 384); *Visalia R. & T. Co. v. Hyde,* 110 Cal. 632; *Bell's
Appeal,* 115 Pa. St. 88.

Counsel for appellant lays much stress upon the holding
of the North Dakota court in *LaVell v. Bullock,* (N. D.)
174 N. W. 764. That was an action by the trustee in bank-
ruptcy of a corporation known as "Everybody's Store," hav-
ing its place of business at Fargo, against the holder of 14
shares of its common stock. The court, in the opinion writ-
ten by Mr. Justice Robinson, holds that there was nothing
due the corporation on the stock, and that, consequently, no
cause of action existed in favor of the plaintiff as the rep-
resentative thereof. Mr. Justice Birdzell, specially con-
curring in the result reached by the majority, held that
the stock in question was issued as a bonus, and was, there-
fore, void, under Section 138 of the Constitution of that
state. What is said thereafter by him is in response to the
argument of counsel for respondent that the defendant was
an innocent purchaser of the stock, which was sold to him
as fully paid, and is concurred in by but one other member
of the court, and a district judge, sitting in place of a mem-
ber of the court disqualified, and possibly should be treat-
ed as dictum; but, if the conclusion announced represents

the views of the North Dakota court, it is, for the reasons indicated, without controlling importance in the case at bar.

The stock held by F. L., E. H., and L. B. Maytag was all originally owned by F. L. Maytag, and issued to him either originally, or with full knowledge of the affairs of the company. Of the several issues of stock authorized by the corporation, 9,569 stood on the books of the company in the name of F. L. Maytag. For all of this stock, he advanced 12½ per cent of the par value in cash, and it is argued by counsel on his behalf that a portion, at least, of it was paid for in labor. Without reviewing the evidence upon this question, suffice it to say that we have carefully read the testimony relied upon by counsel, and are satisfied that no credit should be allowed upon this claim. As between the corporation and the stockholders, the issue of stock for labor which was not performed, and for which no claim was ever presented or allowed by it, may be binding, but not upon creditors seeking to enforce a claim, under the statute against such stockholders. The finding and conclusion of the court below upon this question are, we think, amply supported by the evidence.

Before the commencement of this suit, plaintiff and his attorneys made demand upon F. L. Maytag, with whom the negotiations for the services rendered were had, for the payment of the claim in controversy. No effort was made, at the time, by Maytag to conceal the facts concerning the stock held by him and his sons, or concerning the affairs of the corporation. Its assets had simply been absorbed by the bondholders, who had foreclosed the mortgage held by them, and the property had been sold under execution, leaving nothing for the satisfaction of the claims of creditors. It appears from the evidence, however, that, shortly thereafter,

5. CORPORATIONS: stock issued for unperformed labor.

6. CORPORATIONS: liability of transferor of unpaid stock.

an attempt was made to transfer all of the stock held by the Maytags to one G. A. Smith, to whom the stock was delivered, under an agreement in writing, reciting a consideration of $25,000. It is admitted, however, in the evidence that the true consideration was $25. The stock was not transferred upon the books of the corporation, and, at the time of the commencement of this action, stood in the name of F. L., E. H., and L. B. Maytag, respectively.

Section 423 of the Civil Code of South Dakota provides:

"Whenever the capital stock of any corporation is divided into shares and certificates thereof are issued, such shares of stock are personal property, and may be transferred by endorsement by the signature of the proprietor or his attorney or legal representative, on delivery of the certificate; but such transfer is not valid except between the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties, by and to whom transferred, the number or designation of shares, and the date of the transfer."

The exhaustive research of counsel has resulted in bringing to our attention but one decision of the Dakota court in which the above portion of Section 423 has been given construction: *State Bank. & Trust. Co. v. Taylor*, 25 S. D. 577 (127 N. W. 590, 594). This was a case in which one creditor of the holder of certain shares of corporate stock attached the certificates in the possession of another creditor of said stockholder, who held the same under a written assignment, as collateral security. The court sustained the assignment; but it will be observed that the controversy here was not between the corporation and a creditor of the corporation, who sought to recover, under Section 441 of the Civil Code, for the difference between the par value of the stock and the amount actually paid by the stockholder, but involved the claim of a creditor having nothing to do with the corporation issuing the stock. The

point upon which the decision of the court really rested was that Section 445, which requires all records referred to in Section 423 to be open to the inspection of any director, member, stockholder, or creditor of the corporation, and which further provides that, "in addition to the records above required to be kept, corporations for profit must keep a book to be known as the 'stock and transfer book' in which must be kept a record of all stock; the names of the stockholders or members, alphabetically arranged; installments paid or unpaid; assessments levied and paid or unpaid; a statement of every alienation, sale or transfer of stock made, the date thereof, and by and to whom; and all such other records as the by-laws prescribe. Corporations for religious and benevolent purposes must provide in their by-laws for such records to be kept as may be necessary. Such stock and transfer book must be kept open for the inspection of any stockholder, member or creditor,"—is not a public registration act, and that the right of a pledgee of corporate stock, though such transfer is not entered in the stock book, is superior to that of a subsequent attaching creditor of such pledgor, whether the creditor had notice of the transfer or not. The court said:

"Holding, as we do, that Section 445, Rev. Civ. Code, is not a public registration act, the following words from the *Lipscomb* case (*Lipscomb's Admr. v. Condon,* 56 W. Va. 416 [49 S. E. 392]), become applicable to the case at bar: 'It is obvious that, unless Section 36 or some other provision of the statute is to be regarded as a registration law for the protection of the public, who have no access to the books of the company, these sections are intended only to protect the corporation and those who claim under the certificates of stock.'"

The decision is not, therefore, conclusive, if, indeed, it is in point. The statute specifically makes transfer of cor-

porate stock valid between the parties, whether entered upon the books of the corporation or not. The transfer of the stock to Smith, as already stated, was made after the demand of plaintiff for payment of his claim, and for a purely nominal consideration. Maytag was still held out by the books of the corporation as a stockholder, and, in view of the provisions of the Code of South Dakota, and the circumstances surrounding the transfer of the stock, it cannot be applied, as against the plaintiff, to relieve the defendants from liability.

A further claim of appellant Fantle's should be referred to. A portion of the stock held by him was originally held by a creditor of one Root's, as security for the payment of a note for $2,500, also signed by Fantle as surety. Root defaulted in the payment of the note. It was paid by appellant, to whom the stock was transferred.

7. CORPORATIONS: unpaid stock: "stockholder" defined.

It is contended by counsel for appellant that he should not have been held liable on account of this stock; but it stood upon the books of the corporation in his name, and we fail to see wherein the manner by which he acquired ownership thereof is material. The services were rendered by plaintiff without knowledge of the financial condition of the corporation, and his claim is undisputed. After a careful review of the record and many authorities cited by counsel upon both sides, we are satisfied that the judgment and decree of the court below is right, and must be—*Affirmed.*

WEAVER, C. J., LADD and GAYNOR, JJ., concur.